UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

  v.                                                                      Case No. 06-CR-312

RONALD HARRISON,

    Defendant.

**RECOMMENDATION RE: DEFENDANT'S MOTION TO SUPPRESS**

**I. BACKGROUND**

On November 28, 2006, a federal grand jury returned a two-count indictment against the defendant, Ronald Harrison. Count One charges Harrison, as an individual who previously had been convicted of a crime punishable by imprisonment for a term exceeding one year, with knowingly possessing two firearms which, prior his possession of them, had been transported in interstate and foreign commerce, in violation of Title 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Count Two charges Harrison with knowingly and intentionally possessing with the intent to distribute a mixture and substance containing marijuana, in violation of Title 21 U.S.C. § 841(a)(1) and § 841(b)(1)(D).

On September 18, 2007, Harrison filed a motion to suppress for use as evidence any and all fruits of searches made at 2462 North 5th Street on September 29, 2006. Because the issues raised by the defendant involved factual disputes, on October 18, 2007, an evidentiary hearing was conducted with respect to the defendant's motion to suppress. Thereafter, the government filed a brief in support of its position on the issues raised by the defendant. The evidentiary hearing was

completed on November 15, 2007. The defendant did not file a response to the government's brief. Consequently, the defendant's motion to suppress is now fully briefed and is ready for resolution. For the reasons which follow, it will be recommended that the defendant's motion to suppress be denied.

## II. FACTUAL BACKGROUND

One witness testified at the evidentiary hearing on October 18, 2007: Officer Timothy Keller. Two witnesses testified at the evidentiary hearing on November 15, 2007: Officer Daniel Knitter and Ronald Harrison, Sr. (the father of the defendant). The following is a brief summary of the testimony offered at the evidentiary hearings conducted on October 18 and November 15, 2007.

On September 29, 2006, around 9:00 p.m., Milwaukee Police Department Officers Timothy Keller and Daniel Knitter were on special anti-violent crime patrol, in full uniform and driving in a marked police squad car. They encountered a four-door Buick LeSabre in an alley in the rear of 2462 North 5th Street, Milwaukee, WI. The officers also testified that the vehicle was parked such that it obstructed passage through the alley, in particular the passage of emergency vehicles, in violation of state parking ordinances. The officers knew the area had a high number of violent crimes, including shootings and robberies.

As they approached the Buick from behind, the officers illuminated the Buick with their takedown light and their spot light. Officer Keller testified that he noticed that the Buick's trunk was unlocked and ajar. Officer Knitter also testified that the trunk was unlatched and appeared to bounce slightly up and down. The officers also noted that there were three occupants inside the car, and that the windows were opened. The officers got out of their squad car, with Officer Keller on the

2

passenger side of the Buick and Officer Knitter on the driver's side. The officers had their flashlights pointed at the Buick, but did not have their weapons drawn.

Both officers testified that as they walked toward the Buick they smelled the strong odor of burnt marijuana. Officer Knitter testified that he saw the driver, Ronald Harrison, lean forward in a manner consistent with placing something under his seat. The officers ordered the individuals in the car to put their hands up, and they complied.

Officer Keller testified that as soon as he reached the trunk of the Buick he lifted it up and looked inside. He testified that he lifted the trunk in order to perform a protective sweep because based upon his training, he knew that gang members sometimes hide in the trunk and ambush an officer from inside the unlocked trunk. Officer Keller performed a quick sweep, looking about one second, and observed a green belt with an empty gun holster and a digital scale. He left these items in place. Officer Keller did not see anyone hiding in the trunk. Officer Knitter testified that he observed Officer Keller lift the lid of the trunk. Officer Knitter also testified that based upon his video training, he knew that there was the possibility of someone hiding in an unlatched trunk.

Officer Knitter ordered the defendant out of the car and conducted a quick patdown search, but found nothing. Officer Keller ordered the other two passengers out of the car, one located in the front seat and the other seated directly behind the front passenger seat. Officer Keller testified that both officers looked into the car and that Officer Knitter found a partially smoked blunt on the floorboard. Officer Knitter testified that when he searched the Buick he found unburnt marijuana.

The defendant and passengers were detained, and the officers searched the car and the defendant. Officer Keller testified that they found a loaded .45 caliber firearm underneath the driver's seat, and a large quantity of marijuana in the center console, apparently packaged for

3

distribution. They also found more than $480 in cash in the defendant's pocket. The officers then searched the trunk of the Buick, and seized the digital scale and gun holster.

Ronald Harrison, Sr. testified that he observed the car at approximately 7:15 a.m. the next morning parked on the left side of the alley, and that the Buick was not blocking traffic. Mr. Harrison, Sr. was not aware of the position of the Buick on the night of the arrest.

### III. DISCUSSION

Harrison argues that the initial search of the trunk by Officer Keller was an illegal search which violated his Fourth Amendment right against unreasonable search and seizures. Harrison contends that because the trunk search was illegal, the search of the interior of the car was also illegal and all items seized from the car consequently must be suppressed as fruits of the poisonous tree.

Police officers, under the so-called "automobile exception" to the Fourth Amendment's warrant requirement, may search an automobile without a warrant "when they have probable cause to believe it contains contraband or evidence of a crime." *United States v. Winbush*, 337 F.3d 947, 950 (7th Cir. 2003) (citing *Alabama v. White*, 496 U.S. 325, 332 (1990)); *see also United States v. Carroll*, 267 U.S. 132, 153-56 (1925). "A search of an automobile based on probable cause lawfully extends to all parts of the vehicle in which contraband or evidence could be concealed, including closed compartments and trunks." *United States v. Young*, 38 F.3d 338, 340 (7th Cir. 1994) (citing *California v. Acevedo*, 500 U.S. 565, 570 (1991)). "Probable cause to search exists if, given the totality of the circumstances, there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id*. (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Here, the officers cite the following as the basis for having probable cause to search all parts of the vehicle, including the trunk: (1) the smell of marijuana emanating from the car as soon as they

4

approached the car; (2) observing a gun holster and digital scale in the trunk during Officer Keller's initial search; (3) observing the driver lean forward in his vehicle in a manner consistent with placing something down by his seat; (4) the discovery of a marijuana blunt on the front floorboard; and (5) the discovery of the firearm underneath the driver's seat and large quantities of marijuana in the center console.

The defendant argues that Officer Keller's initial observation of the gun holster and digital scale in the trunk formed the basis for the officers' subsequent search of the interior of the car, and eventual seizure of the items found in the car's interior and trunk. However, after reviewing the evidence presented at the evidentiary hearings, I am satisfied that there was sufficient evidence, independent of Officer's Keller's initial look inside the trunk, to establish probable cause to search all the parts of the car, including the trunk.

To begin with, the smell of marijuana emanating from the vehicle as the officers approached the car provided a basis, independent from the initial search of the trunk, to search the passenger compartment of the car. *See Winbush*, 337 F.3d at 950-51 (open container of alcohol and smell of marijuana coming from car provided a basis for probable cause to search vehicle); *United States v. Johns*, 469 U.S. 478, 482 (1985) (odor of marijuana odor provides probable cause to search vehicle); *United States v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006) (citing *Winbush*, 337 F.3d at 950-51) (dicta; same); *United States v. Foster*, 376 F.3d 577, 583-84 (6th Cir. 2004) (same); *United States v. Ibarra-Sanchez*, 203 F.3d 356, 357 (5th Cir. 2000)(same); *United States v. Taylor*, 162 F.3d 12, 21 (1st Cir. 1998) (citing *United States v. Staula*, 80 F.3d 596, 602 (1st Cir. 1996)) (same); *United States v. Parker*, 72 F.3d 1444, 1450 (10th Cir. 1995)(collecting 10th Circuit cases)(same). Moreover, Officer Knitter testified that he observed the driver lean forward in a manner consistent

5

with placing something under his seat. This observation provided a further basis for probable cause to search the vehicle.

To be sure, the defendant argues that the initial search of the trunk was the impetus for the search of the interior of the car. However, as noted above, there is good reason to believe that the officers would still have searched the passenger compartment of the car even if Officer Keller had not briefly looked into the trunk. The odor of marijuana, as well as the observation of the driver leaning forward, established probable cause to search the interior of the car, and there is no indication that the officers noticed the odor of marijuana because of what Officer Keller observed in the trunk. Indeed, both officers testified that they smelled the strong odor of marijuana as they approached the vehicle, prior to the initial opening of the trunk.

The defendant also argues that the smell of marijuana was only used as a basis to search the trunk. Again, as described above, the odor of marijuana and the observation of the driver leaning forward established probable cause to search the passenger compartment. There is no reason to believe that this evidence would only compel the officers to search the trunk.

Moreover, the officers did not search the entire vehicle based only on the odor of marijuana. When the officers looked inside the passenger compartment of the car after smelling the odor of marijuana, they observed a marijuana blunt on the front floorboard. The discovery of this blunt formed a basis to search the entire car, including the trunk. *See United States v. Johnson*, 383 F.3d 538, 545-46 (7th Cir. 2004) (discovery of drugs on the driver provided probable cause to search the vehicle's trunk because officer had a "reasonable basis for believing that more drugs or other illegal contraband may have been concealed inside."). The defendant was then detained and searched, as the discovery of the blunt also established probable cause to arrest and search the defendant for

6

possession of marijuana. Such being the case, the search of the interior of the car was also justifiable as a search incidental to arrest. *See New York v. Belton*, 453 U.S. 454, 460 (1981).

The officers subsequently discovered the firearm and large quantities of marijuana in their search of the interior of the car. The discovery of these items further established probable cause to search the trunk because they were evidence of drug trafficking, and provided a reason to believe more drugs may be concealed in the trunk. *See United States v. Ortiz*, 84 F.3d 977, 983-84 (7th Cir. 1996) (search based upon probable cause "could extend to any part of the vehicle capable of concealing narcotics or other evidence of drug dealing"); *United States v. McGuire*, 957 F.2d 310, 314 (7th Cir. 1992) (citing *United States v. Ross*, 456 U.S. 798, 822-25 (1982)) (lawful discovery of open container of alcohol in car established probable cause to believe the car contained additional contraband or evidence, and thus gave officer authority to search every part of the car that could conceal additional contraband, including the trunk).

Given the sequence of events beginning with the officers' noticing the smell of marijuana as they approached the vehicle, the search of the interior of the vehicle and its trunk was supported by probable cause. The officers did not merely rely on the odor of marijuana, but rather discovered additional evidence of contraband at each stage of their search. Furthermore, this evidence was discovered independent of the initial search of the trunk.

Moreover, even assuming the initial search of the trunk was illegal, the evidence seized from the trunk is still admissible under the independent source doctrine.[1] The independent source doctrine

---

[1]The independent source doctrine is more applicable to this case, rather than the closely related "inevitable discovery" doctrine, because the contents of the trunk were not recovered under the allegedly illegal search, but instead were recovered later after a search of the interior of the vehicle recovered a firearm and marijuana. Under the inevitable discovery doctrine, "evidence unlawfully obtained is admissible if the evidence would have been inevitably discovered by lawful

7

allows for "the introduction of evidence discovered initially during an unlawful search if the evidence is discovered later through a source that is untainted by the initial illegality." *United States v. Markling*, 7 F.3d 1309, 1315 (7th Cir. 1993) (citing *Murray v. United States*, 487 U.S. 533, 537 (1988).

In this case, the odor of marijuana and subsequent discovery of the blunt, firearm, and marijuana in the interior of the vehicle provided probable cause to search the trunk, independent of the initial search of the trunk. Moreover, as noted above, there is no indication that the officers relied on the discovery of the contents of the trunk when deciding to search the passenger compartment of the car. Simply stated, the contents of the trunk were ultimately seized by way of an untainted source, namely the legal search of the interior of the car after the officers smelled marijuana.

As a final matter, although it is not necessary to address this issue, it may very well be that the initial search of the trunk was legal in any event, as it was justified by exigent circumstances facing the officers. The Seventh Circuit has held that warrantless searches are permissible "when exigent circumstances exist which require immediate action by the police and the police do not have time to secure a warrant." *United States v. Webb*, 83 F.3d 913, 916 (7th Cir. 1996) (citing *Michigan v. Tyler*, 436 U.S. 499, 509 (1978)). To determine whether exigent circumstances existed, a court should evaluate the circumstances "from the perspective of the police officer at the scene to determine whether the police had a reasonable belief that there was a compelling need to act quickly and that there was no time to obtain a warrant." *Id*. (citing *Tyler*, 436 U.S. at 509). Exigent circumstances "exist when there is a reasonable belief by police that their safety, or the safety of the public, may be threatened." *Id*. (citing *United States v. Hardy*, 52 F.3d 147, 149 (7th Cir. 1995)).

---

means." *United States v. Johnson*, 22 F.3d 674, 683 (7th Cir. 1994).

Here, there was a reasonable belief by the officers that their safety may be threatened such that exigent circumstances existed to justify a brief search of the trunk. The officers were on patrol at night in an area known for having a high level of violent crime. The vehicle they were approaching was in an alley obstructing passage of emergency vehicles, with three visible individuals inside. Perhaps most significantly, the officers observed that the trunk of the vehicle was unlatched and slightly ajar. Officer Keller testified that based upon his training, he knew that gang members at times hide in the trunk and ambush an officer from inside the unlocked trunk. Officer Knitter also testified that based upon his video training, he was aware of the possibility of someone hiding in an unlatched trunk. Given these circumstances, it was reasonable for Officer Keller to briefly look inside the trunk (for about one second) to check for any individuals who may be hiding inside.

In conclusion, and for all of the foregoing reasons, it will be recommended that the defendant's motion to suppress physical evidence be denied

**NOW THEREFORE IT IS RECOMMENDED** that the defendant's motion to suppress physical evidence be **DENIED**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Criminal Procedure 59(b)(2), and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of the date of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

9

**SO ORDERED** this 19th day of November, 2007, at Milwaukee, Wisconsin.

>/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge